## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BUILD-A-BEAR WORKSHOP, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) |
| KELLY TOYS HOLDINGS, LLC, | ) |
| KELLY AMUSEMENT HOLDINGS, LLC, | ) **JURY TRIAL DEMANDED** |
| JAZWARES, LLC, and JAZPLUS, LLC. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Build-A-Bear Workshop, Inc. ("Plaintiff" or "Build-A-Bear") brings this declaratory judgment action against Kelly Toys Holdings, LLC ("Kelly Toys"), Kelly Amusement Holdings, LLC ("Kelly Amusement"), Jazwares, LLC ("Jazwares"), and Jazplus, LLC ("Jazplus") (collectively "Defendants") pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, and alleges as follows:

## NATURE OF THE CASE

1.      This is a declaratory judgment action seeking a ruling that: (a) Defendants' claimed trade dress rights in their Squishmallows products are invalid, unenforceable, and unprotectable under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; and (b) Build-A-Bear's SKOOSHERZ™ plush toys do not infringe any of Defendants' claimed trade dress rights in their Squishmallows products under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Build-A-Bear is a Delaware corporation with its principal place of business located at 415 South 18th Street, St. Louis, Missouri 63103.

3.      Upon information and belief, Defendant Kelly Toys is a Delaware limited liability company with its principal place of business located at 4811 South Alameda Street, Los Angeles, California 90058.

4.      Upon information and belief, Defendant Kelly Amusement is a Delaware limited liability company with its principal place of business located at 350 Michael Drive, Syosset, New York 11791.

5.      Upon information and belief, Defendant Jazwares is a Delaware limited liability company with its principal place of business located at 1067 Shotgun Road, Sunrise, Florida 33326.

6.      Upon information and belief, Defendant Jazplus is a Delaware limited liability company with its principal place of business located at 7284 West Palmetto Park Road, Boca Raton, Florida 33433.

7.      Defendants assert that they are either affiliated entities, governed by common ownership and/or intercompany agreements, or otherwise have the right to sell or otherwise distribute Squishmallows products.

8.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     This Court has personal jurisdiction over Defendants because Defendants performed acts within the Eastern District of Missouri subjecting Defendants to the laws of this District, including entering into contracts and transacting business in this District.  Among other things, Defendants' Squishmallows products with their claimed trade dress are available for

purchase in physical retail stores in this District, including but not limited to: Target stores in the City of St. Louis, Kirkwood, Town and Country, and Cape Girardeau, Missouri; Walgreens stores in the City of St. Louis, Kirkwood, Des Peres, and Cape Girardeau, Missouri; and Walmart stores in the City of St. Louis, Kirkwood, Maplewood, and Cape Girardeau, Missouri.  Additionally, Defendants' Squishmallows products are available for order online through Defendant Jazware's website at https://shop.jazwares.com/pages/squishmallows and on https://www.Amazon.com for delivery to physical addresses and customers in this District.  In order to sell Squishmallows products in and to these Missouri locations, the Squishmallows products with the claimed trade dress were shipped to Missouri by one or more Defendants or their agents.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, Defendants' Squishmallows products with the claimed trade dress are sold in competition with Build-A-Bear's SKOOSHERZ$^{TM}$ plush toys in this District, Build-A-Bear's SKOOSHERZ$^{TM}$ plush toys were designed and conceived of in this District, and Defendants can otherwise be found in this District by virtue of the acts identified above.

12.     There is an actual, ripe, and justiciable controversy between Build-A-Bear and Defendants concerning whether Defendants have valid and enforceable trade dress rights under the Lanham Act in their Squishmallows products and whether Plaintiff Build-A-Bear's SKOOSHERZ$^{TM}$ plush toys infringe any trade dress rights associated with Defendants' Squishmallows products under the Lanham Act.  One or more Defendants have previously or are currently asserting trade dress rights in their Squishmallows products under the Lanham Act against multiple manufacturers and sellers of plush toys, including Ty, Inc., Dan-Dee International, and Zuru, LLC, among others.  Additionally, Defendants sued Build-A-Bear on January 29, 2024,

in the 17th Judicial District Circuit Court for Broward County, Florida (*Jazwares, LLC, et al. v. Build-A-Bear Workshop, Inc.*, Case No. CACE-24-001221), attempting to assert Florida state law claims of trade dress infringement and unfair competition relating to Build-A-Bear's SKOOSHERZ™ plush toys.  Also on January 29, 2024, Defendants filed an *ex parte* emergency motion for preliminary injunction, in which Defendants asserted injuries purportedly occurring across the country and not limited or specific to Florida (which motion was subsequently denied by the Broward County, Florida court later in the day).

### FACTS RELATING TO BUILD-A-BEAR AND ITS SKOOSHERZ™ PLUSH TOYS

13.    Founded in 1997, Build-A-Bear is a multi-generational global brand focused on its mission to "add a little more heart to life" appealing to a wide array of consumer groups who enjoy the personal expression in making their own "furry friends" to celebrate and commemorate life moments.

14.    Build-A-Bear currently has nearly 500 interactive brick-and mortar experience locations across the country and around the world, where a variety of formats provide guests of all ages a hands-on entertaining experience and foster a lasting and emotional brand connection.

15.    Build-A-Bear also offers engaging e-commerce/digital purchasing experiences on www.buildabear.com including its online "Bear-Builder", the animated "Bear Builder 3D Workshop" and its age-gated, adult-focused "Bear Cave".

16.    Although Build-A-Bear started with consumers building their own stuffed plush toys, for many years Build-A-Bear has also sold pre-stuffed plush toys in its retail stores and online at www.buildabear.com and its Build-A-Bear store on Amazon.com.

17.    From humble beginnings and a single retail store in St. Louis, Missouri, Build-A-Bear has emerged as one of the world's leaders in high-quality plush toys, innovative store experiences, and engaging, family-friendly entertainment.

18.    In January 2024, and in anticipation of Valentine's Day celebrations, Build-A-Bear introduced on a global basis its new line of collectible plush friends – SKOOSHERZ™ – uniquely styled for optimal hugging benefits.  Displaying a trademarked, unique name evoking their huggability, the adorable SKOOSHERZ™ spherical plush friends are made with an ultra-soft plush and stuffing perfect for hugging.

19.    Build-A-Bear's first five SKOOSHERZ™ plush toys are all based on original, popular Build-A-Bear plush animals, including:



Build-A-Bear's **SKOOSHERZ™** Pink Axolotl



Build-A-Bear's **SKOOSHERZ™** Strawberry Cow



Build-A-Bear's **SKOOSHERZ**™ Spring Green Frog



Build-A-Bear's **SKOOSHERZ**™ Rainbow Sparkles Teddy Bear



Build-A-Bear's **SKOOSHERZ**™ Red Raptor

20.    Build-A-Bear's SKOOSHERZ™ plush toys are distinctly round or spherical in shape, with bright coloring and features matching Build-A-Bear's original, full animal designs (which it continues to sell).

6

21.　　Shown below is a visual comparison of Build-A-Bear's current SKOOSHERZ™ plush toys to its original plush animals on which the SKOOSHERZ™ plush toys are based.

 

Build-A-Bear's **SKOOSHERZ™**
Pink Axolotl

Build-A-Bear's Original
Pink Axolotl

 

Build-A-Bear's **SKOOSHERZ™**
Strawberry Cow

Build-A-Bear's Original
Strawberry Cow

 

Build-A-Bear's **SKOOSHERZ™**
Spring Green Frog

Build-A-Bear's Original
Spring Green Frog




Build-A-Bear's **SKOOSHERZ™**
Rainbow Sparkle Teddy Bear

Build-A-Bear's Original
Rainbow Sparkle Teddy Bear




Build-A-Bear's **SKOOSHERZ™**
Red Raptor

Build-A-Bear's Original
Red Raptor

22.    Each SKOOSHERZ™ plush toy not only has labels and/or hang tags depicting

Build-A-Bear's long-standing common law and federally registered Build-A-Bear Workshop®

name and logo (shown below), but every SKOOSHERZ™ plush toy also has right and left arms,

with one arm bearing Build-A-Bear's common law, federally registered, and iconic BAB® heart-

shaped paw pad logo (also shown below).



23.     Build-A-Bear's advertising and marketing of its new SKOOSHERZ™ plush toys

consistently and prominently include references to Build-A-Bear as the sole and exclusive source

of the SKOOSHERZ™ plush toys.  This includes references to the Build-A-Bear name, the Build-A-Bear Workshop logo, the BAB logo, and other brand indicators on the products, on its website at www.buildabear.com, and in product displays in its physical retail locations, as shown by example below:






24.     Currently, Build-A-Bear's SKOOSHERZ™ plush toys can only be purchased in a Build-A-Bear physical retail store or online through Build-A-Bear's website at www.buildabear.com or the Build-A-Bear store on Amazon.com and are not available for purchase in third-party stores, such as Walgreen's, Walmart, or Target.

**FACTS RELATING TO KELLY TOYS' SQUISHMALLOWS PRODUCTS**

25.     Defendants claim to be the sole and exclusive owners of claimed trade dress rights in their Squishmallows product line.

26.     Defendants' descriptions of the features purportedly comprising their claimed trade dress have changed greatly over the years and as applied to various third parties accused by Defendants of trade dress infringement.  Moreover, none of those purported features are consistently used by Defendants as an identifier of source, but instead constitute a mere product design aimed to aesthetically appeal to consumers.

27.     Over time, Defendants and apparently related entities have asserted at least twelve (12) different descriptions of the combined features purportedly make up their claimed trade dress in the Squishmallows product line, including the following descriptions and the respective cases where such assertions were made (With varying descriptions sometimes found even within the same pleadings!):

(1)    *Kellytoy USA, Inc., et al. v. Dan-Dee Int'l, Ltd., et al.*, Case No. 2:18-cv-05399 (C.D. Cal.), at ECF No. 16, First Amended Complaint (filed Aug. 24, 2018), ¶23:

   a.  substantially bell-shaped plush toys embodying fanciful renditions of animals/characters
   b.  embroidered anime-inspired minimalist, whimsical facial features
   c.  a velvety velour-like textured exterior, and
   d.  stuffing with a light "marshmallow," memory foam-like texture

(2)    *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), at ECF No. 21, Memorandum in Support of Motion for Preliminary Injunction (filed Feb. 21, 2020), p. 3:

      a.  specific egg/bell shape (including the lack of a discrete head and torso) lacking proportionate, pronounced limbs
      b.  abstract, embroidered facial features based on the Japanese Kawaii style
      c.  oval/rounded graphic features
      d.  ultra-soft shell and mooshy, silky stuffing

(3)    *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), at ECF No. 24, Declaration of Jeanne Yoon in Support of Kelly Toys' Motion for Preliminary Injunction (filed Feb. 21, 2020), ¶10

      a.  The specific shape (including the lack of a discrete head and torso) lacking proportionate, pronounced limbs
      b.  Kawaii abstract, embroidered facial features
      c.  Oval/rounded graphic features
      d.  An ultra-soft shell and mooshy, silky stuffing

(4)    *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), at ECF No. 24, Declaration of Jeanne Yoon in Support of Kelly Toys' Motion for Preliminary Injunction (filed Feb. 21, 2020), ¶28:

      a.  egg/bell-like shape
      b.  absence of proportionate/pronounced limbs
      c.  simplified Kawaii-inspired aesthetics
      d.  short pile silky shell
      e.  airy, silky stuffing

(5)    *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), at ECF No. 69, First Amended Complaint (filed May 21, 2020), ¶32:

      a.  Substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters
      b.  Simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys
      c.  Embroidered facial features, such [as] nostrils, and/or mouths
      d.  Distinctive contrasting and non-monochrome coloring
      e.  Short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(6)    *Kellytoy Worldwide, Inc., et al. v. Ty, Inc., et al.*, Case No. 1:20-cv-00748 (N.D. Ill.), at ECF No. 105, Second Amended Complaint (filed Oct. 21, 2020), ¶34:

    a. Substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters
    b. Simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys
    c. Embroidered facial features, such as nostrils, eyes and/or mouths
    d. Distinctive contrasting and non-monochrome coloring
    e. Short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(7) *Kelly Toys Holdings, LLC, et al v. Zuru, LLC*, Case No. 2:23-cv-09255 (C.D. Cal.), at ECF No. 1, Complaint (filed Nov. 2, 2023), ¶3:

    a. Shaped fanciful renditions of animals/characters
    b. Simplified Asian style Kawaii faces
    c. Embroidered facial features
    d. Distinctive and non-monochrome coloring
    e. Velvety velour-like textured exterior

(8) *Kelly Toys Holdings, LLC, et al v. Zuru, LLC*, Case No. 2:23-cv-09255 (C.D. Cal.), at ECF No. 26-2, Exhibit A to Jazplus Opposition to Motion to Dismiss (filed Jan. 22, 2024), ¶23:

    a. substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters
    b. simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys
    c. embroidered two-dimensional facial features, such as eyes, nostrils, mouths
    d. distinctive contrasting and non-monochrome coloring
    e. short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel

(9) *Kelly Toys Holdings, LLC, et al v. Zuru, LLC*, Case No. 2:23-cv-09255 (C.D. Cal.), at ECF No. 26, Jazplus Opposition to Motion to Dismiss (filed Jan. 22, 2024), p. 1:

    a. fanciful rendition of a unique animal with simplified Asian style Kawaii faces in an egg/bell shape in combination with other features that create a distinguishing aesthetic look

(10)   *Jazwares, LLC., et al. v. Build-A-Bear Workshop, Inc.*, Case No. CACE-24-001221
(Florida 17th Cir. Ct.), at Emergency Motion for Temporary Injunction (filed
Jan. 29, 2024), p. 4:

     a.  Substantially egg/bell shaped plush toys depicting various similarly shaped
fanciful renditions of animals/characters
     b.  simplified Asian style Kawaii faces with repeating and complementary
rounded/oval shaped graphics depicting features on the characters themselves
(such as eyes, snouts and bellies) and which conform to and support the overall
egg/bell shape of the toys
     c.  embroidered facial features, such as eyes, nostrils, and/or mouths
     d.  distinctive contrasting non-monochrome coloring
     e.  short-pile exterior

(11)   *Jazwares, LLC., et al. v. Build-A-Bear Workshop, Inc.*, Case No. CACE-24-001221
(Florida 17th Cir. Ct.), at Emergency Motion for Temporary Injunction (filed
Jan. 29, 2024), p. 7:

     a.  Shaped fanciful renditions of animals/characters
     b.  simplified Asian style Kawaii faces
     c.  embroidered facial features
     d.  distinctive and non-monochrome coloring
     e.  short-pile exterior

(12)   *Jazwares, LLC., et al. v. Build-A-Bear Workshop, Inc.*, Case No. CACE-24-001221
(Florida 17th Cir. Ct.), at Emergency Motion for Temporary Injunction (filed
Jan. 29, 2024), p. 25:

     a.  Asian-style Kawaii faces
     b.  Rounded shape
     c.  embroidered facial features
     d.  bright colors
     e.  small facial features
     f.  small appendages
     g.  overall unique minimalistic depiction of cute animals and shapes

(any and all combinations of the foregoing are hereinafter referred to as the "Claimed

Squishmallows Trade Dress").

28.   Most recently, Defendants have asserted infringement of trade dress descriptions

(10) – (12) by Build-A-Bear in Florida state court under Florida common law, but Defendants'

litigation history against third parties suggests that Defendants will likely also claim features found in descriptions (1) – (9) but not found in descriptions (10) – (12), to be identifiers of source for purposes of the Claimed Squishmallows Trade Dress vis-à-vis Build-A-Bear.  For these reasons and others set forth herein, Build-A-Bear is seeking declarations of invalidity, unenforceability, and non-infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., for all features of the Claimed Squishmallows Trade Dress.

29.    The various features Defendants have claimed as components of the Claimed Squishmallows Trade Dress are not all consistently present throughout the entire Squishmallows product line, undermining the assertion of a total product image recognizable by the consuming public as an identifier of a single source.  Defendants contend that their various claimed trade dress features are not easily reduced to writing and that the overall look and image of the Claimed Squishmallows Trade Dress are not limited to specific shapes, colors, textures and graphics.  In fact, Defendants and apparently related entities have previously filed complaints alleging trade dress infringement that included images of the wide variety of Squishmallows products and designs, which images do not consistently display any total product image or commercial impression, such as the following:





30.    No consistent overall look and feel or stable visual appearance can be discerned from Defendants' Squishmallows products.  For example, the snouts are all different (*e.g.*, circular, oval, triangular, and "comma" shaped), with some containing a nose attached to a curved mouth (*e.g.*, dog, leopard, bear, sheep and mouse), one containing a nose and a separate mouth (*e.g.*, sloth), some containing nostrils only (*e.g.*, unicorn, pig, frog, and giraffe), one with lines to resemble an elephant trunk, and some toys lacking a snout altogether (*e.g.*, penguin, which has a beak, and monkey).  One cannot discern distinctive contrasting and non-monochrome coloring in the depicted toys, which run the gamut from various shades of black, brown, tan, white, pink, blue and gray, and including colors and prints found in nature, such as black for the bat, brown for the dog, sloth, bear and monkey, green for the frog, pink for the pig, grey for the mouse and elephant, and leopard and giraffe prints for the corresponding animals.  Even the embroidered, Asian style

eyes have no discernible consistency:  some eyes have eyelashes (*e.g.*, pink unicorn), some are placed on contrasting fabric bands or face masks (*e.g.*, sloth, monkey and blue sheep), and some even have "closed" eyes (*e.g.*, penguin and blue dog).  Some of the toys have contrasting, semi-circular "bellies" whereas others do not, and some have a contrasting irregularly-shaped panel covering the face and belly of the toy (sloth and penguin).  The various "appendages" also differ between the toys depicted above, with horns, manes, and differently shaped ears placed on different parts of the toys (floppy, round, folded, not folded, elephant-shaped, or no ears at all).

31.     Additional examples of Squishmallows purportedly featuring Defendants' claimed trade dress have been submitted in other cases, and further demonstrate that the Claimed Squishmallows Trade Dress features are not consistently found in every Squishmallows product and accordingly do not create a commercial impression of a single source.  For example, not all Squishmallows have "short-pile" fabric or "velvety velour-like textured exterior" because some are made with longer pile fabric (lion's mane and bird's feathers) and some are made with scratchy sequined fabric:



32.     All of Defendants' Squishmallows products do not have "rounded/oval shaped graphics depicting features of the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys".  Instead, Defendants' Squishmallows products have all manner of features and graphics that are linear (snowman and

gingerbread man scarf, mummy tape, elf and nutcracker belts, butterfly belly, witch's bodice), squiggled (clownfish lines, gingerbread man trim and unicorn hair), triangular (elf's collar, pumpkin eyes, and dinosaur mane), or pointed (fox facial features), while others have details not "kawaii" in style (nutcracker, jack-o-lantern, witch):





33.    Defendants' ever-changing claimed trade dress features are essential to the use or purpose of plush products and affect the cost or quality of the products.  If Defendants were granted the exclusive use of any or all of the Claimed Squishmallows Trade Dress used in any combination and/or variation, their competitors would be put at a significant non-reputation-related disadvantage with regard to generic, functional, and non-source identifying features.  Moreover, the claimed trade dress features constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.

34.     The main messages communicated by Defendants' advertising for its Squishmallows product line are softness/squeezability – and collectability.  Defendants also frequently advertise that their Squishmallows can be used as pillows, which message is mentioned in dozens of marketing materials for the products, demonstrating the functionality of the products. Advertising for Defendants' Squishmallows has touted the fact that "[s]ince 2017, the Squishmallows … have offered comfort, support and warmth as … pillow pals" and Kelly Toys' CEO Jonathan Kelly has also declared that Squishmallows can be used as pillows (among other things) in a news release about the toy:  "Squishy and comforting, they are great … pillows." Because Squishmallows function as pillows, those aspects of the products that render them useful as pillows are functional.  The functional "pillow" features of Squishmallows include, at least, the egg/bell shape, the embroidered facial features (hard or plastic features can be too uncomfortable for a pillow), the short-pile, ultra-soft, velvety velour-like textured exterior, and the light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel.

35.     These same elements have been advertised by Defendants as being washable – another functional feature, including in exhibits to Defendants' own complaints against alleged third party infringers, including advertising about the Squishmallows products stating that "the unique line is made of super soft spandex EF and polyester stuffing, similar to memory foam, for crazy, cuddly fun.  Caring for Squishmallows is easy:  give them lots of love, wash in warm water and tumble dry on medium heat."

36.     Defendants also advertise the fact that Squishmallows serve the function of offering comfort and "helping to relieve stress and anxiety."  These claims, along with statements about the tactile appeal of the toys and how the products assist those with sensory issues, have been repeated in numerous marketing materials for the products.

19

37.     Tags, packages, displays and advertisements for Defendants' Squishmallows products tout the functionality of the fact that the toys are "soft", "squishable" and "huggable," with slogans like "SQUEEZE AND CUDDLE ME":



38.     Upon information and belief, Defendants do not own any trademark registrations or exclusive, common law trademark rights to the terms "SQUISH", "SQUISHY", "SQUISHABLE", or "HUGGABLE" in connection with plush toys.

39.     If each aspect of the claimed trade dress were in fact protected trade dress, it would be virtually impossible for competitors to create alternative designs.  For example, Defendants claim as trade dress those elements of its plush products that make the product resemble an animal, including "eyes, snouts and bellies" and "nostrils, and/or mouths."  However, features like eyes, nostrils, ears, and noses are essential to the purpose of creating animal or character figures and are, therefore, functional.  Indeed, many of the asserted elements that are necessary to make Squishmallows resemble their counterparts in nature or a fanciful character (such as eyes, ears, snouts, bellies, nostrils, mouths, coloring, etc.) are functional, and therefore cannot be protectable trade dress.

40.     Defendants' claimed "distinctive contrasting non-monochrome coloring" is also functional.  Fanciful coloring of toy and the overall design of plush toys is aesthetically functional in that it is the toys' aesthetic that drives the consumer to purchase them, and this functionality exists independently of any source-identifying function.

41.     If features such as an egg/bell shape, Asian style Kawaii faces with rounded/oval shaped graphics, embroidered facial features, distinctive contrasting non-monochrome coloring, or short-pile fabric exterior were protected trade dress, it would be virtually impossible for competitors to create alternative toy designs for this item's purpose.  From a toy designer's perspective, each of these claimed trade dress features is necessary to either depict the various characters or animals, or is necessary to create this category of pillow-type plush that is currently trending.

## NUMEROUS SQUISHY PLUSH TOYS EXISTED BEFORE SQUISHMALLOWS ENTERED THE MARKETPLACE IN 2017

42.     Long before Defendants introduced their Squishmallows product line allegedly featuring the claimed trade dress in 2017, third parties offered for sale and sold (and continue to sell) across the United States a number of products featuring all of the elements of Defendants' claimed trade dress, including but not limited to Squishable's plush animal line starting in 2008, Ty's 2011 and 2012 BEANIE BALLZ, Ty's 2013 BABY BALLZ, and KidRobot's Yummy World products starting in 2015:





Ty's Baby Ballz, 2013

Ty Pickles, 2011    Ty Flash, 2011    Ty Bonsai, 2011    Ty Tumbles, 2011    Ty Hello Kitty, 2012

22



YUMMY WORLD Large Macaroon
$ 29.99

YUMMY WORLD Large Pea Pod
$ 29.99

43.     Long before Defendants introduced their Squishmallows product line featuring the claimed trade dress, each of the claimed trade dress elements, either alone or combined, was prevalent in the U.S. toy market and offered for sale and sold by third parties in interstate commerce.  Many of such toys (or variations thereof) are still sold today, including for example:



Molang 2016   Suikko Gurashi 2013   Pusheen 2015   Totoro 2016   Gudetama 2015   Noodoll Pre-2017

Schrodinger's Cat Pre-2017   Squooshies 2017   Sago Minis 2017   Grumpy Cat Pre-2017   Fiesta Owl 2012

23

44.     Moreover, Defendants or related entities have dismissed their complaints against multiple major competitors and their plush products with the claimed trade dress elements, either alone or combined, including but not limited to Ty and its Squishaboos (or Squishy Beanies) plush products and Dan-Dee International and its Squishy plush products.  After such lawsuits were dismissed with prejudice, neither Ty nor Dan-Dee publicly identify that their use is licensed by or affiliated with Defendants in any manner.  Therefore, the product features of these third parties (previously alleged to infringe Defendants' claimed trade dress) do not and cannot identify Defendants as the sole and exclusive source of such trade dress elements, either alone or in combination.

45.     In other words, Defendants have, by their own actions, permitted major third-party competitors like Ty and Dan-Dee to use, without any attribution to Defendants, the same trade dress features that Defendants now claim Build-A-Bear infringes.  Defendants are thereby prevented from acquiring any distinctiveness or secondary meaning in Defendants' Claimed Squishmallows Trade Dress due to a crowded field of products utilizing the very same features Defendants currently claim as trade dress.  Defendants' repeated dismissals with prejudice amounts to admissions that Defendants' claimed rights cannot extend to those products or any others with a similar appearance.  Examples of Ty's current Squishy Beanies and Dan-Dee's current Squishy plush toy are respectively shown below:

**Ty's Squishy Beanies**

**Dan-Dee's Squishy plush toy**



46.     Because third parties have been selling their squishy plush products as identified above before 2017 and for many years thereafter, consumers do not identify any features of the Claimed Squishmallows Trade Dress exclusively with Defendants as the sole source.  Moreover, Defendants' marketing activities and associated expenditures have not established secondary meaning in any trade dress asserted in the Squishmallows product line, because the advertising did not encourage consumers to identify the claimed trade dress solely and exclusively with Defendants.   Indeed, Defendants' own advertising of its product line as the "Original" Squishmallows implicitly acknowledges that there are many other products with similar aesthetic and functional features.

47.     Any commercial success of the Squishmallows product line is attributable to the desirability of the product configuration and functionality rather than the source-designating capacity of the claimed trade dress.

### BUILD-A-BEAR'S SKOOSHERZ™ PLUSH TOYS ARE EASILY DISTINGUISHED FROM DEFENDANTS' SQUISHMALLOWS PRODUCTS

48.     Soft, pillow-like squishie-type products have been trending in the toy industry for a number of years.  Build-A-Bear's SKOOSHERZ™ plush toys are simply the most recent example of pillow-type products in this space, including Squishables, Dan-Dee's Squishy toys,

Ty's Squishaboos, and toys made by Gund, Fiesta, First and Main, Rhode Island Novelty, Moosh, and others, all predating and/or sold contemporaneously in interstate commerce with Defendants' Squishmallows products such that Defendants cannot have acquired any distinctiveness or secondary meaning in the marketplace.

49.    As described above, Build-A-Bear's SKOOSHERZ™ plush toys were not copied from Defendants' Squishables but are based upon, and derive from, preexisting Build-A-Bear toys which have been sold for a number of years.  Moreover, Build-A-Bear's SKOOSHERZ™ plush toys demonstrate functional revisions (in a pillow-like presentation) to its preexisting Build-A-Bear toys, creating a consistent product offering by Build-A-Bear, and not copied or derived from any source-identifying feature purportedly in Defendants' Squishmallows products.  The features present in each of Build-A-Bear's SKOOSHERZ™ plush toys including, for example, the coloration, fabric patterns, facial features, and ear shape and placement come directly from Build-A-Bear's preexisting plush animal products of the same name and design:



Build-A-Bear's **SKOOSHERZ™**
Pink Axolotl



Build-A-Bear's Original
Pink Axolotl



Build-A-Bear's **SKOOSHERZ™**
Strawberry Cow



Build-A-Bear's Original
Strawberry Cow



Build-A-Bear's **SKOOSHERZ™**
Spring Green Frog



Build-A-Bear's Original
Spring Green Frog



Build-A-Bear's **SKOOSHERZ™**
Rainbow Sparkle Teddy Bear



Build-A-Bear's Original
Rainbow Sparkle Teddy Bear





Build-A-Bear's **SKOOSHERZ**<sup>TM</sup>
Red Raptor

Build-A-Bear's Original
Red Raptor

    50.    The design features on Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys come from Build-A-Bear, not Defendants.

    51.    There is no confusing similarity between Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys and Defendants' claimed trade dress.  In terms of overall appearance of the products, Build-A-Bear's SKOOSHERZ<sup>TM</sup> are distinctly spherical or rounded in shape, in contrast to the claimed egg/bell-shaped design of Defendants' Squishmallows product line.  Build-A-Bear's facial features match their preexisting designs and do not mimic Defendants' facial features, including eyes and mouth features that are specifically distinguished in terms of shape (for example, round eyes vs. oval or moon-shaped eyes).  The coloration of Build-A-Bear's products functionally matches the specific animal depicted, including the distinctive yellow colored belly in its original Build-A-Bear "raptor" design and which is a functionally accurate part of this dinosaur depiction.  The parties' respective source-identifying labels and tags are prominently displayed on their respective toys as well.  A visual contrast of Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys and Defendants' Squishmallows products is shown below:



Defendants' Archie the Pink Axolotl
Squishmallow



Build-A-Bear's **SKOOSHERZ™**
Pink Axolotl



Defendants' Evangelica Cow
Squishmallow



Build-A-Bear's **SKOOSHERZ™**
Strawberry Cow



Defendants' Wendy Green Frog
Squishmallow



Build-A-Bear's **SKOOSHERZ™**
Spring Green Frog



Defendants' Marley Rainbow Bear
Squishmallow



Build-A-Bear's **SKOOSHERZ™**
Rainbow Sparkle Teddy Bear



Defendants' Red Snowflake Dinosaur
Squishmallow



Build-A-Bear's **SKOOSHERZ™**
Red Raptor

52.     Defendants' Claimed Squishmallows Trade Dress is not capable of creating a commercial impression distinct from generic, functional, and/or descriptive features.  That is, Defendants' claimed trade dress is nonexistent, because product shape and feel and the cosmetic depiction of animals almost invariably serves purposes other than source identification, because the claimed trade dress lacks commercial strength in the form of secondary meaning, and because the features alleged to be Defendants' trade dress were used (and continue to be used) by multiple competitors in interstate commerce long before Defendants offered for sale and/or attempted to acquire trade dress rights in its Squishmallows products.

53.     Upon information and belief, Defendants consistently and prominently offer for sale and sell their Squishmallows products utilizing their federally registered SQUISHMALLOWS

trademarks, and to the extent the consuming public identifies the source of Defendants' products, it does so by such registered trademarks, and not the overall shape, size, or commercial appearance of any of Defendants' products.  Indeed, Defendants have not even attempted to register trade dress at the federal level in any of their Claimed Squishmallows Trade Dress designs, presumably because they know the U.S. Trademark Office would not approve of Defendants' shifting, vague, and overbroad descriptions of their purported trade dress, and because Defendants know they cannot prove acquired distinctiveness, secondary meaning, and/or sole and exclusive rights to their Claimed Squishmallows Trade Dress.

54.     Although Defendants want their amorphous trade dress definition to include the entirety of a vast, varied product line, the Squishmallows product line lacks any common features, so Defendants cannot register it.  Some Squishmallows are animals, some are not.  Some have round eyes, some have slits.  Some have mouths, some do not.  Some have arms or feet, some do not.  Some have bellies, some do not.  Some have ears, some do not.  Some wear clothes, some do not.  Some have noses or snouts, some do not.  Some have eyes on the tops of their heads, some do not.  Defendants' Squishmallows have no consistent colors or color patterns.  Because of this utter lack of consistency, Defendants would not be able to submit a single drawing of the claimed trade dress that could possibly satisfy the U.S. Trademark Office's regulatory requirements for providing notice to the public of Defendants' claimed rights.  Even if one found the oval/egg-shaped perimeter to be consistent across the product lineup (which it is not), that would not help Defendants because they cannot register trade dress rights in an oval.

55.     In other words, Defendants have avoided any attempt at federal registration of their claimed trade dress because Defendants do not own a single trade dress encompassing all Squishmallows and therefore cannot properly assert trade dress claims against Build-A-Bear.

56.     Additionally, consumers are not likely to be confused between the source of the Build-A-Bear SKOOSHERZ<sup>TM</sup> plush toys compared to Defendants' Squishmallows products. Adults, as purchasers of the Build-A-Bear SKOOSHERZ<sup>TM</sup> plush toys, are likely to exercise reasonable care when purchasing the parties' respective plush products and can easily distinguish the sources of the parties' products, which, among other things, are clearly and prominently labeled with the parties' names and trademarks.

57.     By selling its SKOOSHERZ<sup>TM</sup> plush toys, Build-A-Bear does not seek to confuse any consumer as to the source of its products, and there is in fact no actual confusion.  Each of Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys is sold in connection with its source-identifying SKOOSHERZ<sup>TM</sup> trademark and its famous Build-A-Bear name and logo that clearly and prominently identifies Build-A-Bear as the source of the products, including on the product hang tag, the product label, and even with its iconic "BAB" heart paw logo on the arm of each Build-A-Bear SKOOSHERZ<sup>TM</sup> plush toy.

58.     The advertising and marketing of Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys always includes references to Build-A-Bear as the sole and exclusive source, including on its website at www.buildabear.com and in product displays in its physical retail locations.  Moreover, Build-A-Bear's SKOOSHERZ<sup>TM</sup> plush toys can only be currently purchased in a Build-A-Bear physical retail store or online through Build-A-Bear's website at www.buildabear.com and the Build-A-Bear store on Amazon.com and are not available for purchase in third-party stores like Walgreen's, Walmart, or Target.

59.     This clarity of labeling in packaging, advertising, and sale avoids any likelihood of consumer confusion as to source stemming from the product's configuration, even if any features

of the Claimed Squishmallows Trade Dress could be deemed valid and enforceable against any features of Build-A-Bear's SKOOSHERZ™ plush toys.

<b><u>COUNT I – DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF THE CLAIMED SQUISHMALLOWS TRADE DRESS</u></b>

60.     Build-A-Bear incorporates by reference Paragraphs 1 through 59 as if fully set forth herein.

61.     Defendants have a history of litigious conduct, wherein Defendants have previously asserted in multiple cases against multiple third parties that Defendants have valid and enforceable trade dress in their Squishmallows product line under the Lanham Act.

62.     Further, Defendants have previously asserted in multiple cases against multiple third parties that those third parties' manufacture, advertising and sale of plush toys infringe Defendants' claimed trade dress rights in their Squishmallows product line.

63.     In particular, Defendants and related entities have filed at least thirty-three (33) federal district court lawsuits regarding Defendants' Squishmallows products against hundreds of defendants under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and/or other federal and common law claims.  Those 33 federal lawsuits have been filed over the course of the last seven (7) years in the United States District Courts for the Southern District of New York, the Northern District of Illinois, and the Central District of California.  Defendants have continued filing such federal Lanham Act infringement lawsuits regarding Defendants' Squishmallows products in just the past few months, including filing a Lanham Act trade dress infringement lawsuit against Zuru, LLC, in the Central District of California on November 2, 2023 (*Kelly Toys Holdings, LLC, et al. v. Zuru, LLC*, Case No. 2:2023cv09255), and a Lanham Act trademark infringement lawsuit against over 135 internet toy sellers in the Northern District of Illinois on January 5, 2024 (*Kelly Toys Holdings,*

*LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 1:2024cv00165).

64.     Defendants have further asserted that Build-A-Bear's SKOOSHERZ[TM] plush toys infringe Defendants' claimed trade dress rights in its Squishmallows product line under Florida law, having filed a lawsuit against Build-A-Bear in Broward County, Florida, on January 29, 2024. Although nominally brought under Florida law, Defendants' Complaint against Build-A-Bear and subsequently denied *ex parte* emergency motion for preliminary injunction contain contentions not limited to injuries or activities in Florida.  By their allegations in that Florida state court action, Defendants clearly contend that Build-A-Bear's SKOOSHERZ[TM] plush toys infringe Defendants' claimed trade dress rights in its Squishmallows product line across the United States and not just Florida, thereby directly implicating Defendants' claimed trade dress rights under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., as Defendants have previously asserted and are currently asserting those Lanham Act trade dress rights against hundreds of defendants.

65.     Defendants have also expressly stated in their Florida state court action that Defendants "**Vigilantly Protect Their Intellectual Property**", that "Kelly Toys takes steps to ensure that their intellectual property is protected," and that "Kelly Toys will stop at no length to prevent" misuse of its intellectual property.  Defendants' statements of intent to enforce their claimed intellectual property rights and history of litigious conduct are indicative of an actual controversy.

66.     Build-A-Bear has been actively selling and marketing its SKOOSHERZ[TM] plush toys across the United States starting in January 2024, and otherwise taking concrete steps to conduct activity that could constitute alleged infringement.

67.     Build-A-Bear has a reasonable apprehension of suit by Defendants in view of, among other things, Defendants' history of litigious conduct in federal court under the Lanham Act with respect to their Squishmallows products, Defendants' statements of intent to enforce their claimed intellectual property rights in their Squishmallows products, Defendants' actual lawsuit against Build-A-Bear in Florida state court alleging infringement of trade dress under Florida law, and Build-A-Bear's active sale and marketing of its SKOOSHERZ™ plush toys across the United States.

68.     Build-A-Bear seeks specific relief through a decree of conclusive character so that Build-A-Bear can remove the cloud of Defendants' asserted trade dress infringement with respect to Build-A-Bear's SKOOSHERZ™ plush toys currently being sold and marketed on a nationwide basis.

69.     An actual and justiciable controversy has arisen between Build-A-Bear and Defendants regarding the validity and enforceability of Defendants' claimed rights in the Claimed Squishmallows Trade Dress under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, which controversy between the parties having adverse legal interests is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in this matter.

70.     Build-A-Bear is entitled to a declaratory judgment under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, declaring that no features of Defendants' Claimed Squishmallows Trade Dress are valid, enforceable, or protectable because, *inter alia*: (1) the claimed trade dress is generic; (2) the claimed trade dress is not specifically articulated but instead uses terms to describe its claimed trade dress that are variable, vague, overbroad, and open-ended; (3) the claimed trade dress is not used across the entire Squishmallows product line to gain any consumer recognition as source-identifying features; (4) the claimed trade dress elements are functional; (5) the claimed

35

trade dress is not capable of creating a commercial impression distinct from generic, functional, and/or descriptive features; (6) Defendants cannot prove first use of the claimed trade dress; and/or (7) the claimed trade dress lacks secondary meaning in the marketplace, such that Defendants are not recognized by consumers as being the sole and exclusive source of goods bearing any or all of the claimed trade dress elements.

<u>**COUNT II – DECLARATORY JUDGMENT OF NON-INFRINGEMENT**</u>
<u>**OF THE CLAIMED SQUISHMALLOWS TRADE DRESS**</u>

71.     Build-A-Bear incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

72.     Build-A-Bear's SKOOSHERZ™ plush toys do not infringe Defendants' Claimed Squishmallows Trade Dress because no features of Defendants' Claimed Squishmallows Trade Dress are valid or enforceable because, *inter alia*: (1) the claimed trade dress is generic; (2) the claimed trade dress is not specifically articulated but instead uses terms to describe its claimed trade dress that are variable, vague, overbroad, and open-ended; (3) the claimed trade dress is not used across the entire Squishmallows product line to gain any consumer recognition as source-identifying features; (4) the claimed trade dress elements are functional; (5) the claimed trade dress is not capable of creating a commercial impression distinct from generic, functional, and/or descriptive features; (6) Defendants cannot prove first use of the claimed trade dress; and/or (7) the claimed trade dress lacks secondary meaning in the marketplace, such that Defendants are not recognized by consumers as being the sole and exclusive source of goods bearing any or all of the claimed trade dress elements.

73.     To the extent Defendants own any valid or enforceable trade dress rights, Build-A-Bear's SKOOSHERZ™ plush toys do not create any likelihood of consumer confusion, nor are

they likely to cause mistake or deceive, or misrepresent the nature, characteristics, qualities or geographic origin of any goods and/or services.

74.     An actual and justiciable controversy has arisen between Build-A-Bear and Defendants regarding Build-A-Bear's purported infringement of Defendants' Claimed Squishmallows Trade Dress under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, which controversy between the parties having adverse legal interests is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in this matter.

75.     Build-A-Bear has not infringed and does not infringe any valid or enforceable rights in Defendants' Claimed Squishmallows Trade Dress, and Defendants have not been and are not likely to be damaged by Build-A-Bear's conduct.

76.     Build-A-Bear is entitled to a declaratory judgment under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, that its manufacture, marketing, and sale of its SKOOSHERZ™ plush toys does not infringe Defendants' claimed trade dress or any of Defendants' related rights in their Squishmallows product line.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Build-A-Bear Workshop, Inc. prays for judgment as follows:  (a) declaring that any and all claimed trade dress rights by Defendants in their Squishmallows products are invalid and unenforceable under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, including specifically 15 U.S.C. §§ 1114 and 1125, and other applicable federal law; (b) declaring that Build-A-Bear's SKOOSHERZ™ plush toys do not infringe any of Defendants' claimed trade dress rights in its Squishmallows products under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, including specifically 15 U.S.C. §§ 1114 and 1125, and other applicable federal law; (c) awarding Build-A-Bear its attorneys' fees, costs, and other expenses, including as an

exceptional case under 15 U.S.C. § 1117 and other applicable federal law; and (d) awarding Build-A-Bear such other and further relief as this Court deems just and proper under the circumstances.

### JURY DEMAND

Plaintiff Build-A-Bear demands a trial by jury as to all claims and all issues so triable.

Dated:  February 12, 2024

Respectfully submitted,

**LEWIS RICE LLC**

By:     /s/  Michael J. Hickey
       Michael J. Hickey, #47136(MO)
       mhickey@lewisrice.com
       Philip J. Mackey, #48630(MO)
       pmackey@lewisrice.com
       Allison E. Knopp, #74724(MO)
       aknopp@lewisrice.com
       600 Washington Avenue, Suite 2500
       St. Louis, Missouri 63101
       (314) 444-7600
       (314) 241-6056 (fax)

       ***Attorneys for Plaintiff Build-A-Bear***
       ***Workshop, Inc.***