UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUILD-A-BEAR WORKSHOP, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:24-cv-00211-MTS ) |
| KELLY TOYS HOLDINGS, LLC; et al., | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF BUILD-A-BEAR WORKSHOP, INC.'S**
**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Build-A-Bear Workshop, Inc. ("Build-A-Bear") filed this declaratory judgment action after Defendants unsuccessfully sought an *ex parte* "emergency" order in Florida state court attempting to restrain Build-A-Bear's sale of its SKOOSHERZ™ plush toys (the "Florida Lawsuit"). In the Florida Lawsuit, Defendants contended that secrecy was necessary, in part, to avoid litigating in federal court. (ECF No. 12-2 at 34.) Now, Defendants sing a different tune: they are *so* eager to pursue claims in federal court that they seek dismissal of Build-A-Bear's Complaint in favor of a *later-filed* federal case in *California* (the "California Lawsuit"), while simultaneously attempting to pursue the Florida Lawsuit (which Build-A-Bear has moved to stay). (*See* Exhibit A hereto.)

Defendants' arguments for dismissal are baseless. Because it was first served, this case is considered first-filed relative to *both* the Florida and the California actions—though only the California Lawsuit is relevant here. Further, all Defendants are subject to personal jurisdiction in Missouri because they market and sell their Squishmallows products to Missouri consumers, which marketing and sales have purportedly given rise to Defendants' alleged trade dress rights in their Squishmallows products—the very conduct and assertion of rights that caused Build-A-Bear to seek a declaratory judgment from this Court. Defendants cannot simultaneously assert trade dress

1

rights in Missouri – allegedly created by overwhelming consumer recognition of the purportedly unique look of the Squishmallows product line – while also claiming their contacts with Missouri (and Missouri consumers, specifically) are so limited that personal jurisdiction is entirely lacking. Defendants' objections misstate the law and ignore their contacts creating personal jurisdiction here in Missouri. This Court should deny Defendants' Motion to Dismiss.

## BACKGROUND

Defendants admittedly sell their Squishmallows products in Missouri in brick and mortar retail locations, including over a dozen stores in St. Louis County alone. (ECF No. 1 ¶10; ECF No. 22-1 ¶¶8–10.)[1] They also sell Squishmallows products to Missouri consumers directly online, via Defendants' own Internet store and Amazon.com, at least. (ECF No. 1 ¶10.) Defendants (directly and/or through their agents) have caused Squishmallows products to be shipped to Missouri for sale here in competition with Build-A-Bear's SKOOSHERZ™ plush toys. (*Id.* ¶¶10–11.) These Squishmallows products are the basis for Defendants' assertions of nationwide trade dress rights.[2] (*Id.* ¶¶1, 10, 25, 28–29, 61–64.) Although Defendants deny that they "specifically target[]" Missouri customers or "design[]" their advertising for Missouri, and further state that they have no employees, offices, or physical presence in, and are not registered to do business in, Missouri (ECF No. 22-1 ¶¶8–10), Defendants do *not* dispute the contacts alleged in the Complaint.

---

[1] Defendants' factual allegations come from the Declaration of Nelson Rodriguez, which the Court should disregard because it was *electronically* signed (*see* ECF No. 22-1 at 3), in violation of E.D. Mo. L.R. 2.11, wherein any document "created for the litigation" and "signed by [a person] other than an attorney of record . . . *must be physically signed*." (emphasis added); *cf. Graber, Inc. v. W&Z Contracting Constr., LLC*, No. 4:19-cv-67 CDP, 2022 WL 873349, at *4 & n.10 (E.D. Mo. Mar. 24, 2022) (disregarding declaration not properly signed).

[2] As set forth in Build-A-Bear's Complaint, Defendants have no valid trade dress rights in their Squishmallows products line. (ECF No. 1 ¶70.) Another federal court recently confirmed that Defendants' description of purported trade dress was wholly inadequate failed to state a claim. (*See* Exhibit B hereto, at 5.). Based on the significant defects in Defendants' claims, the court pointedly warned Defendants that any amended pleading alleging trade dress must be "consistent with Federal Rule of Civil Procedure 11(b)." (*Id.* at 7.)

2

Also undisputed is that, in late January 2024, Defendants sued Build-A-Bear in Florida state court, claiming that the marketing and sale of Build-A-Bear's SKOOSHERZ™ plush toys violates Defendants' supposed trade dress rights in their Squishmallows product line. (*See* ECF No. 12-1.) Defendants did not serve Build-A-Bear or provide any notice of their lawsuit and motion for preliminary injunction to Build-A-Bear. Instead, Defendants urged the Florida court to keep the proceedings secret and issue an *ex parte* "emergency" restraining order barring marketing and sales of Build-A-Bear's SKOOSHERZ™ plush toys. (ECF No. 12-2.) One proffered justification for this attempted end-run around due process was a purported concern that Build-A-Bear would "try to improperly remove the case to federal court." (*Id.* at 34.) When Defendants' attempted ambush failed (*see* ECF No. 12-4), their sense of urgency apparently faded, as Build-A-Bear was not served with the Florida Lawsuit until a month later—two weeks *after* Build-A-Bear served Defendants in this case.[3] Defendants' stated aversion to federal litigation faded, too. After Build-A-Bear filed this action seeking a declaratory judgment that Defendants have no trade dress rights in their Squishmallows products line, and that in any event Build-A-Bear's SKOOSHERZ™ plush toys do not infringe any purported trade dress rights, Defendants filed a second, *federal* lawsuit in the Central District of California, which is the subject of Build-A-Bear's separate Motion to Enjoin. (ECF Nos. 11, 22-3.)

## LEGAL STANDARD

Where a party seeks a stay or dismissal due to concurrent federal litigation, "[t]he well-established rule is that . . . 'the first court in which jurisdiction attaches has priority to consider the case.'" *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)

---

[3] Notably, after sitting on the Florida case for over a month, Defendants then improperly attempted to use that suit to seek premature discovery regarding Build-A-Bear's claims in *this* Court. (*See* <u>Exhibit C</u> hereto); Fed. R. Civ. P. 26(d)(1); E.D.Mo. L.R. 3.01(B).

(quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). To overcome the first-filed rule, a movant must show "compelling circumstances." *Id.* at 489.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a court must assess whether the plaintiff has alleged "sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (alteration and quotation omitted). Only "a prima facie showing of personal jurisdiction over the defendant" is required. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court "must view the evidence in the light most favorable to the plaintiff," *see K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011), and any "[d]oubts as to whether a court has personal jurisdiction over an individual or entity should be resolved in favor of retaining jurisdiction." *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 958 (D. Minn. 2000).

## ARGUMENT

Defendants seek dismissal on grounds that: (1) they filed a separate lawsuit in a California federal court after this case was filed; and (2) this Court lacks personal jurisdiction over Defendants. This Court should reject both arguments and deny Defendants' Motion to Dismiss.

### A.    No Compelling Circumstances Justify Ignoring the First-Filed Rule.

As Defendants concede, this case was filed *before* the California Lawsuit. (ECF No. 22 at 11.) Thus, this Court is "the first court in which jurisdiction attache[d]." *U.S. Fire Ins.*, 920 F.2d at 488. Under the first-filed rule, this case "has priority" over the California Lawsuit unless "compelling circumstances" demand otherwise. *Id.*[4]  Build-A-Bear previously addressed the

---

[4] Though this case's priority relative to the Florida Lawsuit is not at issue here, the Florida state court will defer to this Court's priority because "service [was] first perfected" here. *Shooster v. BT Orlando Ltd. P'ship*, 766 So. 2d 1114, 1116 (Fla. Dist. Ct. App. 2000). Build-A-Bear served

4

arguments Defendants make in this section even more fully in its Reply Memorandum in Support of its Motion to Enjoin, which it fully incorporates herein. (*See* ECF No. 30.)

Defendants absurdly suggest that the California case is *actually* the first-filed case because they have disputed personal jurisdiction in this Court, or, alternatively, that this defense is itself a compelling circumstance favoring dismissal. (ECF No. 22 at 11 n.3, 13.) Defendants attempt to rely on *Orthmann* in support of this novel, nonsensical proposition, but *Orthmann* provides no such support. In *Orthmann*, the plaintiff first filed in Minnesota, where he faced a personal jurisdictional challenge, and then filed a second case in Wisconsin federal court. 765 F.2d at 120; *cf. Rural Media Grp., Inc. v. Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1113 (D. Neb. 2010) (citing *Orthmann*). When the first-filed Minnesota case was dismissed for lack of personal jurisdiction under Minnesota's long-arm statute, the plaintiff appealed to the Eighth Circuit while the Wisconsin case continued to be litigated on the merits. *Orthmann*, 765 F.2d at 120–21. *In the context of that particular fact pattern*, the Eighth Circuit dismissed the appeal of the first-filed case to avoid resolving a dispute over Minnesota's long-arm statute and to promote judicial economy, where the later-filed case had progressed for *nearly two years*. *Id.* at 121.

Here, by contrast, Defendants do not raise a state-law challenge to personal jurisdiction; they do not even *cite* Missouri's long-arm statute. (*See generally* ECF No. 22.) Nor has the later-filed California Lawsuit even progressed any farther than this one, much less than by two years. Rather, motions to dismiss are pending in both courts, and the Motions here will be fully briefed long before the mid-May date when the motion in the California Lawsuit is set for argument. Nothing in *Orthmann* remotely suggests that "compelling circumstances" exist on the facts of this case sufficient to ignore the first-filed rule.

---

Defendants with this lawsuit two weeks before it was served with the Florida Lawsuit, and separately moved for a stay in Florida state court, as required under Florida law. (*See* Exhibit A.)

5

To the contrary, district courts in the Eighth Circuit have repeatedly and properly held that a mere *dispute* over personal jurisdiction in a first-filed case is not a reason for later-filed litigation to proceed before the jurisdictional issue is resolved. *See, e.g.*, *ZeaVision LLC v. Bausch & Lomb Inc.*, No. 4:21-CV-00072 JAR, 2021 WL 5905986, at *5 (E.D. Mo. Dec. 14, 2021) ("The Eighth Circuit *has not held* that a court can apply the first-filed rule only after it is established that jurisdiction/venue in the first-filed case is proper." (emphasis added)); *Cent. Bank of St. Louis v. Nec Amarillo Emergency Ctr.*, No. 4:17-CV-02214 ERW, 2017 WL 4888981, at *3 (E.D. Mo. Oct. 30, 2017) (staying proceedings where personal jurisdiction was litigated in earlier-filed federal case); *Adv. Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 17-3149-CV-S-BP, 2017 WL 9717215, at *2 (W.D. Mo. July 6, 2017) (same).  Defendants' nonsensical position would allow any party to circumvent the first-filed rule, effectively forum shop, and manipulate venue determinations, by merely challenging personal jurisdiction – an illogical and unfair result.

Defendants also claim two "red flags" show compelling circumstances to ignore the first-filed rule,  (ECF No. 22 at 10–14), but fail to show that either alleged "red flag" in this case constitutes compelling circumstances that justify setting aside the first-filed rule.  *First*, Defendants incredibly argue that their *state court* litigation in *Florida* should have placed Build-A-Bear on notice of Defendants' intent to file a later *federal* case in *California*, and therefore this Court should dismiss the instant case in favor of the California Lawsuit.  (ECF No. 22 at 11–12.) Defendants assert this position despite their repeated and express insistence in the Florida Lawsuit that they specifically sought to *avoid* federal litigation against Build-A-Bear.  (*See, e.g.*, ECF No. 12-2 at 34; ECF No. 12-3 at 4.)  Moreover, *none* of Defendants' cited cases suggests a "red flag" exists here. Rather, in each of those cases, the declaratory plaintiffs received cease and desist letters threatening immediate litigation, then "raced to the courthouse to usurp" the other party's

6

"forum choice." *See Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 418–19 (8th Cir. 1999); *see also Creative Compounds, LLC v. Sabinsa Corp.*, 2004 WL 2601203, at *3 (E.D. Mo. Nov. 9, 2004). Nothing about the Florida Lawsuit provided Build-A-Bear *any* notice that Defendants would initiate *further* litigation anywhere, much less that they would be asserting further *federal* claims in *federal* court while simultaneously proceeding with the Florida Lawsuit.[5]

*Second*, Defendants imagine a "red flag" simply because Build-A-Bear's Complaint seeks only declaratory relief. (ECF No. 22 at 12.) But declaratory relief is not, in itself, a reason to dismiss a first-filed case in favor of a later-filed action. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993) (applying first-filed rule to permit declaratory judgment action to proceed); *U.S. Fire Ins.*, 920 F.2d at 488–89 (same). In fact, the Eighth Circuit has held it is an *abuse of discretion* to stay a first-filed declaratory judgment action under the Lanham Act in favor of a later-filed infringement action. *See Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870, 874–75 (8th Cir. 2002). Defendants have not shown any "red flag," nor a reason to dismiss.

*Third*, Defendants cite "other factors" they claim justify dismissal in favor of the California Lawsuit. Some of these arguments have already been addressed by Build-A-Bear. Others are plainly not compelling circumstances that would override the "well-established" first-filed rule. *See Nw. Airlines*, 898 F.2d at 1005 (citation omitted). Only one argument warrants a reply: Defendants' allegation that this case was an attempt to "usurp" their right to sue Build-A-Bear in a forum of Defendants' choosing. (ECF No. 22 at 13.) This argument is absurd. Defendants had every chance to send Build-A-Bear a cease and desist letter to preempt declaratory relief, but they

---

[5] If anyone "raced to the courthouse", it was Defendants, who filed their California Lawsuit only hours after Build-A-Bear filed the instant case. Their California counsel emailed the California Lawsuit to undersigned counsel the same day, further demonstrating Defendants had notice of this lawsuit when they filed the California Lawsuit later the same day. (ECF No. 12-8.)

7

did not do so. Defendants had every chance to serve Build-A-Bear in Florida, California, or *any other jurisdiction* before Build-A-Bear filed its Complaint in this case, but they did not do so. Only *after* Build-A-Bear filed this action—which provides the most complete relief because it can definitively resolve Defendants' purported trade dress claims across the country—did Defendants file the California Lawsuit. Build-A-Bear could not "usurp" Defendants' right to pick a *second* forum to file duplicative and parallel litigation against Build-A-Bear. Build-A-Bear *had no notice* that Defendants would litigate further in *any* forum (and Defendants expressly stated they were trying to avoid federal litigation), much less in a specific forum. Indeed, no one could have imagined Defendants would try to prosecute parallel lawsuits in Florida state court and California federal court involving the same claims and the same defendant. The Court should reject Defendants' baseless arguments, faithfully apply the first-filed rule, and deny Defendants' Motion.

**B.       This Court Has Specific Personal Jurisdiction Over All Defendants.**

Personal jurisdiction is the court's ability to exercise its judicial power over a particular defendant. Personal jurisdiction can be "general" or "specific." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012). Relevant here, specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Id.* Exercising specific jurisdiction "is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979–80 (8th Cir. 2015). Although a court assessing personal jurisdiction may look outside the pleadings when the record *contradicts* the facts alleged in the complaint, *see id.*, Defendants' invalid declaration does not contradict the key jurisdictional facts Build-A-Bear has alleged. (*Compare* ECF No. 1 ¶¶10–11; *with* ECF No. 22-1 ¶¶8–10.)

Assessing specific personal jurisdiction over an out-of-state defendant is a two-stage

8

process. *Dairy Farmers of Am.*, 702 F.3d at 475. First, the Court determines whether the complaint alleges conduct that falls within Missouri's long-arm statute. *Id.* If it does, the Court must next assess whether "[t]he exercise of jurisdiction satisfies due process." *Id.* at 477.

This Court clearly has specific personal jurisdiction over all Defendants, who concede that they market and sell to Missouri consumers the Squishmallows products that are the very subject of their broadly asserted trade dress claims. The nature of a trade dress claim is that consumers purportedly recognize a product's (or product line's) aesthetic features as exclusively attributable to a single source of those goods. *See, e.g.*, *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) (secondary meaning or "acquired distinctiveness" requires that "the user of … a [trade] dress … show that by long and exclusive use in the sale of the user's goods, the [dress] has become so associated in the public mind with such goods that the [dress] serves to identify the source of the goods and to distinguish them from those of others"). Defendants cannot claim on the one hand that Missouri consumers immediately recognize Defendants as the *exclusive* source of the Squishmallows products' combination of aesthetic features, and then, on the other hand, deny Defendants have taken sufficient actions in Missouri to warrant personal jurisdiction here.

Defendants do not even engage in the required two-step analysis. (ECF No. 22 at 14.) Further, their due process analysis fails by invoking irrelevant case law that applies, at best, only to patent cases that recent Supreme Court decisions have likely abrogated entirely. Under the *relevant* case law, Build-A-Bear has satisfied both prongs of the specific jurisdiction test.

**1. Build-A-Bear Has Alleged Sufficient Facts Under Missouri's Long-Arm Statute.**

Missouri law permits the exercise of personal jurisdiction based on an out-of-state defendant's "transaction of any business" or "making of any contract" within the State. *See* Mo. Rev. Stat. § 506.500.1(1)–(2). "These individual categories are construed broadly," and the statute will "be interpreted to provide for jurisdiction . . . to the full extent permitted by the Due Process

Clause" for even a single act that falls within those categories. *Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd.*, 127 F. Supp. 3d 1020, 1025–26 (E.D. Mo. 2015) (quotation omitted).

Defendants do not even cite Missouri's long-arm statute in their memorandum. (*See generally* ECF No. 22.) Build-A-Bear alleges that Defendants both: (1) distribute Squishmallows products to Missouri retailers; and (2) directly sell Squishmallows products to Missouri consumers over the Internet. (ECF No. 1 ¶ 10.) These contacts fit comfortably within the transaction-of-business and making-of-contracts prongs of Section 506.500. *See, e.g.*, *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 830–31 (Mo. Ct. App. 2000) (online sales to Missouri residents, even without Missouri-specific advertising, constitutes transacting business in Missouri); *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 225 (Mo. banc 2015) (personal jurisdiction existed where plaintiff alleged online purchase was a contract formed in Missouri). Section 506.500 clearly encompasses Defendants' sales in Missouri, and Defendants have waived any counter-argument by failing to raise it in their Motion.

**2. Exercising Specific Personal Jurisdiction Is Consistent With Due Process.**

Step two of the specific jurisdiction analysis considers whether an out-of-state defendant has sufficient case-related contacts to the forum state to render personal jurisdiction consistent with due process. *See K-V Pharm. Co.*, 648 F.3d at 592. The key inquiry is whether an out-of-state defendant has performed "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted). Five factors are relevant to the analysis:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. . . . [T]he first three factors are primary factors, and the remaining two are secondary factors."

*K-V Pharm. Co.*, 648 F.3d at 592–93.  All five factors support personal jurisdiction here.

Defendants' chief argument is that the *only* contacts relevant to personal jurisdiction in this case are acts to enforce underlying trademark rights—not commercial contacts with the forum. (ECF No. 22 at 16–17.)  That is wrong.  The non-binding, unpublished cases on which Defendants rely involve outdated, patent-specific personal jurisdictional doctrines irrelevant in this case.

Specifically, *ZeaVision LLC v. Bausch & Lamb, Inc.* involved a declaratory judgment action related to federally registered *patents*.  No. 4:21-cv-72 JAR, 2021 WL 5905986, at *4 (E.D. Mo. Dec. 14, 2021). There, the Eastern District of Missouri applied then-existing personal jurisdiction precedent from the Federal Circuit, which has developed unique personal jurisdiction rules related to patent litigation.  *Id.* (citing Federal Circuit law).  This case is not a patent case, and this Court of course should apply the Eighth Circuit's personal jurisdiction precedent.

Unlike the Federal Circuit, the Eighth Circuit applies a traditional minimum-contacts analysis to declaratory judgment claims.  *See, e.g.*, *Acuity v. Rex, LLC*, 929 F.3d 995, 1002 (8th Cir. 2019).  *Acumen Brands, Inc. v. NHS, Inc.*, a non-binding case from the Western District of Arkansas, improperly extended the Federal Circuit's then-existing patent-specific personal jurisdiction analysis to a declaratory judgment case involving trademarks.  No. 5:16-cv-5284, 2017 WL 1330212, at *3 & n.5 (W.D. Ark. Apr. 6, 2017).  *Acumen* justified this extension on the belief that trademark claims are "analogous" to patent claims.  *Id.*  But that is not so.  Other courts have recognized that *Acumen*'s reasoning is flawed because trademark rights depend on "trademark *use*," while patent rights vest *independently* of use, so commercial use "of [a] patented product could be regarded as jurisdictionally inconsequential." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1093–94 (9th Cir. 2023) (refusing to extend the Federal Circuit's patent-specific personal jurisdiction rules to declaratory judgment action involving trademarks); *see also PDK*

11

*Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1110–11 (2d Cir. 1997) (holding commercial contacts to forum state, not "the cause of action *anticipated* by the declaratory judgment" are relevant for personal jurisdiction in Lanham Act declaratory judgment cases).  Commercial contacts in a forum state *are* relevant to personal jurisdiction in declaratory judgment cases involving trademark rights—particularly alleged trade dress—because a defendant's commercial forum activities are the asserted basis for, give rise to, and directly "relate to" such rights.

Even if *Acumen* were somehow correct when decided (which it was not), recent Supreme Court precedent has undermined even the Federal Circuit's patent-specific personal jurisdiction doctrines by holding that a cause of action may "arise from or relate to" a defendant's contacts to a forum state without any specific *causal* relation between the contacts and the cause of action.  *See Ford Motor Co. v. Mont. 8th Judicial Dist. Ct.*, 592 U.S. 351, 362 (2021).  *Ford* held that personal jurisdiction existed in Montana over an out-of-state defendant that sold and marketed allegedly defective products there, even though the products that caused the plaintiff's alleged injuries were not purchased in Montana.  *Id.* at 366.  As the Ninth Circuit observed in rejecting the patent-specific jurisdictional analysis previously used by the Federal Circuit:

> Consistent with *Ford*, an action seeking a declaration of trademark non-infringement can . . . arise out of, or at the very least relate to, trademark building activities in a forum state.  To the extent the relationship between these trademark building activities and a later trademark declaratory judgment action is not strictly causal, *Ford* confirms that is not strictly required.

*Impossible Foods*, 80 F.4th at 1094; *id.* at 1093 (further noting Federal Circuit's apparent abandonment of its patent-specific "bright-line approach that considers only traditional enforcement activities").  This Court should not, in conflict with recent Supreme Court precedent, illogically expand a patent-specific personal jurisdiction rule to this trade dress action.

Defendants otherwise offer only scant argument under the *relevant* personal jurisdiction framework.  Nevertheless, all five factors support the existence of specific jurisdiction in this case.

12

*First*, the nature and quality of Defendants' contacts with Missouri support personal jurisdiction. Defendants' marketing and sales in Missouri involve the very Squishmallows products that give rise to Defendants' trade dress claims and in turn Build-A-Bear's claims of trade dress invalidity and non-infringement. These ongoing, intentional commercial acts in Missouri are not merely "fortuitous" or "isolated." *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Defendants also enter into contracts to deliver products to Missouri (including directly with Missouri consumers through Defendants' own online store), (ECF No. 1 ¶10), which further supports personal jurisdiction here. *See K-V. Pharm. Co.*, 648 F.3d at 594 (contract to deliver goods into forum state supports personal jurisdiction there); *see also Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 524 (8th Cir. 1996) (commercial "contacts with the forum state that are made ***on behalf of*** the defendant by others" can favor personal jurisdiction).

In the Internet sales context, personal jurisdiction exists where a defendant "does business over the Internet" by selling goods online to forum-state residents. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *cf. Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003) (adopting *Zippo* test for assessing specific jurisdiction). Defendants do just that: Missouri consumers can purchase Squishmallows products over the Internet directly from Defendants' website. (ECF No. 1 ¶10.) Under *Zippo*, and thus Eighth Circuit case law, those sales *alone* are grounds to exercise personal jurisdiction. *See Zippo*, 952 F. Supp. at 1124; *accord Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1333 (E.D. Mo. 1996) (personal jurisdiction was proper where defendant "consciously decided to transmit advertising information to all internet users" through its website and knew the advertisements would reach Missouri users).

Defendants rely on *Jones v. Papa John's International, Inc.*, to argue that Internet contacts are not enough. But *Jones* involved Missouri residents' unilateral access of a website that collected

13

their browsing data.  No. 4:23-cv-23 SRC, 2023 WL 7155562, at *4 (E.D. Mo. Oct. 31, 2023).  The *Jones* defendant had done nothing intentionally to obtain data from Missourians—or even to use its software to interact at *all* with Missouri, so personal jurisdiction did not exist.  *Id*.  Conversely, Defendants intentionally send products to Missouri pursuant to online contracts formed via their website.  (ECF No. 1 ¶10).  Under the *Zippo* framework, that is more than enough.

Defendants further protest that Build-A-Bear has not shown Missouri-specific advertising or marketing efforts.  (ECF No. 22 at 17–18.)  This is a red herring.  Even without tailored marketing, personal jurisdiction exists where an out-of-state manufacturer "pours its products into a regional distributor with the expectation that the distributor will penetrate" the market in the forum state.  *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (alteration and quotation omitted).  Defendants admit that they enter nationwide distribution agreements for Squishmallows products, (ECF No. 22-1 ¶9), which necessarily entails an expectation that such products will be sold in Missouri.  *See Vandelune*, 148 F.3d at 947.

*Second*, the quantity of Defendants' contacts with Missouri is substantial.  Defendants sell Squishmallows products not only directly to Missouri consumers online, but also through Missouri retailers—over a dozen major stores in St. Louis County, including Wal-Mart, Walgreen's, and Target.  (ECF No. 1 ¶10.)  This Court has found specific jurisdiction in a trademark case where the defendant had made just *four* sales in Missouri.  *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 957 (E.D. Mo. 2001).  Defendants' retail contacts in St. Louis County *alone*, not to mention their Internet sales and other sales in Missouri, far exceed that amount.

*Third*, Defendants' contacts with Missouri are directly related to the causes of action asserted here.  The third personal jurisdiction factor is satisfied where "the defendant purposely directs its activities at the forum state and the litigation" results from those activities.  *Myers v.*

14

*Casino Queen, Inc.*, 689 F.3d 904, 913 (8th Cir. 2012). Build-A-Bear's Complaint easily satisfies that standard: it seeks a declaration that Defendants' claims of trade dress are invalid and unenforceable and that in any event its SKOOSHERZ™ plush toys do not infringe on Defendants' purported trade dress. (*See generally* ECF No. 1.) Defendants' intentional sale of Squishmallows products in interstate commerce—the very conduct that ties them to Missouri—is what necessitated Build-A-Bear to seek a declaration of its rights from this Court. Federal courts across the country have found personal jurisdiction over out-of-state defendants in declaratory actions under the Lanham Act where the defendant has sold products or otherwise done business in the forum state. *See, e.g.*, *Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, No. 2:20-cv-1488 RJC, 2021 WL 4287997, at *10 (W.D. Pa. Sep. 21, 2021); *Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 400–01 (D. Md. 2010); *Solar Gear Inc. v. Sunglass Hut Int'l Inc.*, No. C-93-20931 RMW, 1994 WL 587237, at *3 (N.D. Cal. May 24, 1994). This factor strongly favors exercising jurisdiction over Defendants here.[6]

## CONCLUSION

Personal jurisdiction exists over Defendants under both Missouri's long-arm statute and the Due Process Clause.[7] This Court should deny Defendants' Motion to Dismiss.

---

[6] Although the first three factors are the most important, *see K-V Pharm. Co.*, 648 F.3d at 592, the fourth and fifth factors also favor exercising jurisdiction here. Missouri has a "manifest interest in providing effective means of redress for its residents," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985), including a large company like Build-A-Bear whose principal place of business is in St. Louis, Missouri, (ECF No. 1 ¶ 2), and has many stakeholders here. *See City Merch.*, 176 F. Supp. 2d at 957. Moreover, the comparative burden of litigating in Missouri favors personal jurisdiction, where some Defendants will need to litigate out-of-state no matter *where* this litigation occurs and where Defendants' prior infringement actions demonstrate they have no issue litigating coast to coast. (*See* ECF No. 1 ¶¶ 3–6, 27.)

[7] Because personal jurisdiction exists over all Defendants, no defendant was improperly joined under Fed. R. Civ. P. 19. Defendants' scant Rule 19 argument needs no further discussion.

15

                          Respectfully submitted,

Dated: March 18, 2024             **LEWIS RICE LLC**

                          By:   /s/ Michael J. Hickey
                                  Michael J. Hickey, #47136(MO)
                                  mhickey@lewisrice.com
                                  Philip J. Mackey, #48630(MO)
                                  pmackey@lewisrice.com
                                  Allison E. Knopp, #74724(MO)
                                  aknopp@lewisrice.com
                                  600 Washington Avenue, Suite 2500
                                  St. Louis, Missouri 63101
                                  (314) 444-7630
                                  (314) 612-7630 (fax)

                                  ***Attorneys for Plaintiff***
                                  ***Build-A-Bear Workshop, Inc.***