# EXHIBIT A

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

KELLY TOY HOLDINGS, LLC, et al.,        Case No. CACE-24-001221

    Plaintiff,

v.

BUILD-A-BEAR WORKSHOP, INC.,

    Defendant.

_____/

**DEFENDANT BUILD-A-BEAR WORKSHOP, INC.'S MOTION TO STAY**

Defendant Build-A-Bear Workshop, Inc. ("Build-A-Bear" or "BABW"), by and through undersigned counsel, moves the Court to stay this action in deference to an action involving the same subject matter and pending between the same parties in Missouri federal court which has priority over this matter. In support of its Motion, Build-A-Bear states as follows:

**INTRODUCTION**

The Court should stay this action under the well-established "principle of priority" because the United States District Court for the Eastern District of Missouri has exercised jurisdiction over a pending action involving the same parties and the same subject matter before this Court's jurisdiction attached, thus giving that lawsuit (the "Missouri Lawsuit") priority as a matter of law. (*See Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Compl. (Doc. #: 1), Exhibit A hereto.)

Plaintiffs Jazwares, LLC, Kelly Toy Holdings, LLC, Kelly Amusement Holdings, LLC, and Jazplus, LLC (collectively, "Plaintiffs") attempt to assert against Build-A-Bear overly broad, vague, generic, and ever-changing rights in unregistered trade dress in their Squishmallows product line, as they've attempted to do in many other lawsuits against other parties throughout the country, though they have never prevailed. In effect, Plaintiffs seek to preclude Build-A-Bear

(and others) from making cute, soft, plush toys, even though such toys have existed for years before Squishmallows ever came to market.

Plaintiffs initially filed this case on January 29, 2024, but after their highly unconventional attempt to obtain an "emergency," *secret* order enjoining Build-A-Bear from selling its SKOOSHERZ™ plush toys was rejected by this Court, it appeared to Build-A-Bear to become inactive.[1] Plaintiffs chose not to initially serve Build-A-Bear or take further action, such as even *notifying* Build-A-Bear of the lawsuit or their allegations, for weeks after this request for *ex parte* injunctive relief was denied. Two weeks after Plaintiffs' lawsuit, uncertain as to Plaintiffs' intentions, Build-A-Bear filed and immediately served a declaratory judgment action in the United States District Court for the Eastern District of Missouri (where Build-A-Bear is headquartered) to clear its rights nationally in the falsely accused SKOOSHERZ™ plush toys. After Build-A-Bear filed its Missouri Lawsuit, Plaintiffs filed a new, separate action in the United States District Court for the Central District of California and served Build-A-Bear the following day (the "California Lawsuit"). It was not until 32 days after filing this case—after Build-A-Bear filed and served the Missouri Lawsuit, after Plaintiffs filed and served the California Lawsuit, and after Build-A-Bear moved to enjoin litigation of the California Lawsuit—that Plaintiffs finally got around to serving Build-A-Bear in this case.

As a result of Plaintiffs' own bad-faith and incoherent litigation strategy and duplicative filings, jurisdiction over the dispute between the parties attached first in the Missouri Lawsuit, thus giving it priority over this case, and requiring that the Court stay this action under the longstanding

---

[1] As discussed further below, this Court denied Plaintiffs' request to hold an *ex parte* hearing and issue an injunction to stop BABW from distributing or marketing its product, without any prior notice of the lawsuit or motion to BABW or opportunity to defend such motion, which motion was based on demonstrably and obviously false "verified" statements.

2

principle of priority. *See Wade v. Clower*, 114 So. 548, 551 (Fla. 1927) ("Where a state and federal court have concurrent jurisdiction over the same parties or privies and the same subject-matter, the tribunal where jurisdiction first attaches retains it exclusively"); *Shooster v. BT Orlando Ltd. P'ship*, 766 So. 2d 1114, 1116 (Fla. 5th DCA 2000) ("under Florida procedural law the federal court exercised jurisdiction over the cause first with the earlier service of process.").

If, for some reason, this case is not stayed notwithstanding the facts and circumstances explained in this Motion, Build-A-Bear will be forced to vigorously defend against Plaintiffs' meritless and improper claims in multiple fora. To that end, and subject to and without waiving this Motion to Stay, BABW is also moving to dismiss Plaintiffs' Verified Complaint for failure to state a claim, including on the grounds that Plaintiffs have failed to plausibly articulate any protectable trade dress in their Squishmallows products, which motion is filed contemporaneously herewith.[2]

While Build-A-Bear is confident Plaintiffs' claims will fail on their merits, Build-A-Bear respectfully submits that the Missouri federal court has priority and should adjudicate this dispute rather than this Court. This Court should, therefore, stay this case.

## BACKGROUND

A brief summary of the background facts and pending actions will assist the Court in ruling on Build-A-Bear's Motion.

---

[2] Notably, a California federal court recently dismissed Plaintiffs' claims for infringement of alleged trade dress in their Squishmallows products against another toy manufacturer, Zuru, LLC, which manufactured plush toys known as "Snackles." In that case, the court ruled that "the claimed trade dress description is too broad and ambiguous to form the basis of a plausible claim for trade dress infringement and therefore does not satisfy the requirements of Rule 8" of the Federal Rules of Civil Procedure. (*See Kelly Toys Holdings, LLC v. Zuru, LLC*, Case No. 2:23-cv-09255-MCS-AGR (C.D. Cal.), Order on Mot. to Dismiss (Doc. #: 23), at 5; *see also id.* (noting further that Defendants' description of Squishmallows products as bearing "simplified Asian style Kawaii faces" invokes "questionable orientalist tropes without doing much to describe the asserted trade dress")).

3

I.  **Build-A-Bear's SKOOSHERZ™ Plush Toys, and Plaintiffs' Squishmallows Product Line and Litigation History.**

In January 2024, in anticipation of Valentine's Day, Build-A-Bear introduced, on a global basis its new line of collectible plush toys bearing the SKOOSHERZ™ brand. (*See Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Compl. (Doc. #1), Exhibit A hereto, at ¶ 18; *see also* Verified Compl. at ¶ 4.) These original plush toys are round or spherical in shape, with features matching Build-A-Bear's original, full animal designs, which it continues to sell. (*Id.* at ¶ 20.) Each SKOOSHERZ™ plush toy has labels or hang tags depicting Build-A-Bear's long-standing common law and federally registered Build-A-Bear Workshop® name and logo, with one arm of the toy bearing Build-A-Bear's common law, federally registered, and iconic BAB® heart-shaped paw pad logo. (*Id.* at ¶ 22.) Build-A-Bear's advertising and marketing of its SKOOSHERZ™ plush toys consistently and prominently include references to Build-A-Bear as the sole and exclusive source of SKOOSHERZ™ plush toys. (*Id.* at ¶ 23.)

While Plaintiffs claim to be the sole and exclusive owners of claimed trade dress in their Squishmallows product line (*See* Verified Compl. at ¶ 2), no court overseeing actual adversarial litigation has ever recognized any exclusive rights to such trade dress, and their descriptions of the features purportedly comprising the claimed trade dress have changed greatly over the years and as applied to various third parties accused of trade dress infringement.[3]

---

[3] Over the last seven years, Plaintiffs and related entities have filed 33 lawsuits attempting to assert various intellectual property rights, including common law trade dress rights in their Squishmallows products (they have no federal trade dress registrations or applications pending). Plaintiffs historically have filed in federal court. In a sharp deviation from this practice, Plaintiffs chose to file their *first* lawsuit against Build-A-Bear in Florida state court, ostensibly because they (wrongly) thought this Court would be more receptive to their "unconventional" approach and relief sought (*i.e.*, a "secret" lawsuit seeking an *ex parte* injunction to stop a global retailer's sales of products).

## II. Plaintiffs' Litigation Campaign Against Build-A-Bear and its SKOOSHERZ™ Plush Toys.

### A. Plaintiffs filed, but did not initially serve, this case in a failed attempt to obtain an emergency, *ex parte* order halting the sale of Build-A-Bear's SKOOSHERZ™ plush toys.

Plaintiffs commenced litigation against Build-A-Bear by filing a Verified Complaint in this Court on January 29, 2024, alleging that Build-A-Bear's SKOOSHERZ™ plush toys infringe alleged Florida common law trade dress rights in their Squishmallows products (with attendant Florida common law and statutory unfair competition claims based on these asserted trade dress rights). (*See* Verified Compl.)[4] Plaintiffs endeavored to obtain a secret, emergency injunction prohibiting Build-A-Bear from selling its SKOOSHERZ™ plush toys. (*See generally* Verifed *Ex Parte* Emergency Mot. for Temp, Injunction ("Emergency Mot."); Request for Emergency Relief.) Plaintiffs claimed they were being irreparably harmed "every day" and therefore were entitled to immediate, *ex parte* relief. (Request for Emergency Relief at 1.) Plaintiffs also filed the same day a motion requesting that the Court seal their Verified Complaint and Emergency Motion. (*See* Pl.'s Mot. to Det. Confid. of Court Records.) Plaintiffs provided no notice to Build-A-Bear of the action or their emergency request for injunctive relief. Worse, they argued that notice *should not* be given. Plaintiffs made baseless and demonstrably false accusations in their "verified" complaint in supposed support of their extraordinary request, including that notice "may well cause Build-A-Bear to destroy . . . and/or hide evidence," (Emergency Mot. at 28), and further claiming that Build-A-Bear may remove the case to federal court, (Request for Emergency Relief at 2).

---

[4] Plaintiffs' "Verified Complaint", signed by Jordan A. Shaw, contains demonstrably and easily knowable false statements. If the case is not stayed, BABW will address in detail the multiple false statements of fact made to this Court.

The Court summarily rejected Plaintiffs' Request for Emergency Relief the day it was filed, declining to hear it on an emergency basis. (*See* Order Declining to Schedule Emergency/Urgent Hearing.) Having lost their gambit to secure a secret hearing and expedited order halting the sale of Build-A-Bear's SKOOSHERZ™ plush toys, Plaintiffs, in stark contrast to the ostensibly "emergency" manner in which they commenced the case, took no further action, leaving a cloud over Build-A-Bear's right to sell its SKOOSHERZ™ plush toys. It was not until March 1, 2024, *after* Build-A-Bear filed a declaratory judgment action in Missouri federal court and served it on Plaintiffs (see below), that Plaintiffs finally served Build-A-Bear in this action.

**B. Build-A-Bear filed and served the Missouri Lawsuit to obtain a nationwide declaration clearing the cloud improperly created over SKOOSHERZ™ plush toys by Plaintiffs' then un-served Florida action.**

Build-A-Bear learned of this case, despite Plaintiffs' best efforts to conceal it. Uncertain as to Plaintiffs' intentions with respect to the un-served Florida action and seeking to remove the cloud that nascent lawsuit and the false allegations therein improperly created over continued sale of Build-A-Bear's SKOOSHERZ™ plush toys, Build-A-Bear sought a comprehensive resolution of the dispute on a national basis. Build-A-Bear did so by, on February 12, 2024, filing a Complaint for Declaratory Judgment in the United States District Court for the Eastern District of Missouri, the federal district in which Build-A-Bear is headquartered. (*See Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Compl. (Doc. #1), <u>Exhibit A</u> hereto.) Build-A-Bear served Plaintiffs the very same day. (*See id.*; *see also* Summonses Returned Executed (Doc. #s: 7-10), <u>Exhibit B</u> hereto.)

In the Missouri Lawsuit, Build-A-Bear requests a declaration that Plaintiffs do not have any cognizable trade dress rights in their Squishmallows products under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and that, alternatively, Build-A-Bear's Skoosherz™ products do not

6

infringe any such purported rights. (*See* Exhibit A, Compl. (Doc. #: 1) at ¶ 1.) Resolution of the Missouri Lawsuit will refute Plaintiffs' false allegations concerning Build-A-Bear's national sales of its SKOOSHERZ™ toys and remove the cloud Plaintiffs improperly created.

### C. Plaintiffs filed and served the California Lawsuit in reaction to the Missouri Lawsuit.

Later on February 12, 2024, a few hours after Build-A-Bear filed the Missouri Lawsuit, Plaintiffs filed another action against Build-A-Bear, this time in the United States District Court for the Central District of California. (*See Kelly Toys Holdings, LLC, et al. v. Build-A-Bear Workshop, Inc.*, 2:24-cv-01169-JLS-MAR, (C.D. Cal.), Compl. (Doc. #: 1), Exhibit C hereto.) The allegations and claims in the California Lawsuit arise out of the same facts, transactions, and occurrences as those at issue in Build-A-Bear's first-filed Complaint in the Missouri Lawsuit. The California Lawsuit asserts claims for federal trade dress and copyright infringement and alleged violation of California statutory and common law unfair competition, all based on Build-A-Bear's sale of its SKOOSHERZ™ plush toys. (*See id.*) Plaintiffs served Build-A-Bear with the California Lawsuit on February 13, 2024, the day after it was filed. (*See id.*, Proofs of Service (Doc. #s: 12-14), Exhibit D hereto.) Build-A-Bear subsequently filed a motion in the Missouri Lawsuit, seeking to enjoin Plaintiffs from proceeding with their improperly filed California Lawsuit. (Missouri Lawsuit (Doc. #: 11) (Exhibit E hereto.)

## ARGUMENT

I. **The Court Should Stay This Matter Pursuant to the Principle of Priority Because Jurisdiction Attached First in the Missouri Lawsuit Involving the Same Parties and Subject Matter, Thus Giving That Action Priority Over the Instant Lawsuit.**

"Florida courts do not apply a bright-line 'first-filed' test to resolve questions of competing jurisdiction in concurrent jurisdictions." *OPKO Health, Inc. v. Lipsisu*, 279 So. 3d 787, 792 (Fla. 3d DCA 2019). Rather, Florida courts apply the "principle of priority," which "hinges on the

7

court's exercise of jurisdiction in an action." *Id.* Under that principle, where two courts exercise concurrent jurisdiction over the same dispute, "the court which first exercises its jurisdiction acquires exclusive jurisdiction to proceed with that case." *Bedingfield v. Bedingfield*, 417 So. 2d 1047, 1050 (Fla. 4th DCA 1982), *receded from in part on other* grounds, *Thomas v. Thomas*, 724 So. 2d 1246 (Fla. 4th DCA 1999) (en banc). "Florida has followed this principle in instances of concurrent federal and state jurisdiction." *Id.*; *see also Ocwen Loan Servicing, LLC v. 21 Asset Mgmt. Holding, LLC*, 307 So. 3d 923, 926 (Fla. 3d DCA 2020) (staying Florida state court action in deference to federal case because "the principle of priority, as a matter of comity, applies").

In fact, it has been the law in Florida for nearly a century under Supreme Court of Florida precedent that "[w]here a state and federal court have concurrent jurisdiction over the same parties or privies and the same subject-matter, the tribunal where jurisdiction first attaches retains it exclusively and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue . . . arising in the case." *Wade*, 114 So. at 551.

Importantly, under Florida law, jurisdiction attaches upon service of process, not filing of the complaint. *See Shooster*, 766 So. 2d at 1116 ("[U]nder Florida procedural law the federal court exercised jurisdiction over the cause first with the earlier service of process."); *see also Mabie v. Garden Street Mgmt. Corp.*, 397 So. 2d 920, 921 (Fla. 1981) (holding that "the better policy is to . . . have the date of service of process govern the jurisdictional conflict presented").

Once priority is established, "the usual practice" is "for the court in which the second action is brought" to "suspend proceedings until the first action is tried and determined." *Wade*, 114 So. at 551; *see also Shooster*, 766 So. 2d at 1116 (stay is "'the usual practice' in the interest of state-federal comity."). This "usual practice" is so established and strong that "[a] trial court abuses its discretion when it fails to respect" it absent "extraordinary circumstances." *OPKO Health*, 279

8

So. 3d at 792 (quoting *Hirsch v. DiGaetano*, 732 So. 2d 1177, 1178 (Fla. 5th DCA 1999)); *Ocwen Loan*, 307 So. 3d at 926. Florida appellate courts "have more than once granted certiorari to quash orders declining to stay actions in favor of prior actions pending in different jurisdictions." *See Shooster*, 766 So. 2d at 1116 (collecting cases). There is no basis to depart from the long-established "usual practice" of staying a Florida state action like this one in deference to a corresponding federal action with priority, and this Court should follow this practice and stay this litigation.

    **A.  Jurisdiction attached first in the Missouri Lawsuit, thus giving it priority, because service of process occurred in that case before this one.**

Service of process occurred first in the Missouri Lawsuit, thus giving it priority. The Missouri federal court exercised jurisdiction first when Build-A-Bear served Plaintiffs with process on February 12, 2024. (*See Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Summonses Returned Executed (Doc. #s: 7-10), Ex. B hereto.) The California federal court then exercised jurisdiction second, when Build-A-Bear, the defendant in that case, was served with process on February 13, 2024. (*See Kelly Toys Holdings, LLC, et al. v. Build-A-Bear Workshop, Inc.*, Case No. 2:24-cv-001169- JLS-MAR, Proofs of Service (Doc. #s: 12-14), Ex. D hereto.) This Court then exercised jurisdiction third, and last, when Build-A-Bear was eventually served with process on March 1, 2024. (*See* Summons, Ex. F hereto.)

The Missouri Lawsuit thus has first priority over this case. *See, e.g.*, *Shooster*, 766 So. 2d at 1115-16 ("federal court exercised jurisdiction over the cause first with earlier service of process," even though the federal case was filed after the state action); *OPKO Health*, 279 So. 3d at 793 (Supreme Court of Florida precedent "unequivocally rejects the concept that the suit first filed prevails," and instead "[t]he 'principal of priority' dictates that the first court to exercise jurisdiction retains the exclusive right" to adjudicate); *Fasco Indus., Inc. v. Goble*, 678 So. 2d 916,

9

917 (Fla. 5th DCA 1996) ("[J]urisdiction lies in the court where service first is perfected against all defendants. *Mabie* unequivocally rejects the concept that the suit first filed prevails."); *Reuther v. Reuther*, 524 So. 2d 1035, 1035 (Fla. 4th DCA 1988) ("Jurisdiction lies in Germany since service of process was first perfected" there).

> **B. The Missouri Lawsuit involves the same parties and same subject matter as this case.**

The parties are the same in the Missouri Lawsuit and here. Build-A-Bear, the Defendant in this case, is the Plaintiff in the Missouri Lawsuit. Jazwares, Kelly Toys Holdings, Kelly Amusement Holdings, and Jazplus, the Plaintiffs here, are Defendants in the Missouri Lawsuit. (*Compare* Verified Compl. at 1, *with Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Compl. (Doc. #1), Ex. A hereto, at 1.)

The Missouri Lawsuit and this case also share the same subject matter. Both cases comprise claims based on Plaintiffs' alleged trade dress rights in their Squishmallows products, and Build-A-Bear's alleged infringement of those rights through the sale of its SKOOSHERZ™ plush toys. Here, Plaintiffs assert claims under Florida law, all based on their purported trade dress rights in the Squishmallows products. (*See generally* Verified Compl.) The first count (Count I) asserts a claim for common law trade dress infringement, alleging that Build-A-Bear's SKOOSHERZ™ products infringe Plaintiff's alleged common-law trade dress in their Squishmallows products. (*See id.* at 29-31.) The remaining four counts asserts claims for common law unfair competition (Count II), violation of the Florida Deceptive and Unfair Trade Practices Act (Count III), and for preliminary and permanent injunctive relief (Counts IV and V), all of which are expressly based on Plaintiffs' alleged trade dress rights in the Squishmallows products and alleged infringement of the same by Build-A-Bear's SKOOSHERZ™ toys. (*See, e.g., id.* at Count II, ¶¶ 73-76; *id.* at Count III, ¶¶ 82, 84, 87; *id.* at Count IV, ¶¶ 92-98; *id.* at Count V, ¶¶ 106-112.) Similarly, in the Missouri

10

Lawsuit, Build-A-Bear seeks a declaration that Plaintiffs have no protectible trade dress rights in their Squishmallows product line, and, even if they did, Build-A-Bear's SKOOSHERZ™ products do not infringe them. (*See Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC et al.*, Case No. 4:24-cv-00211-MTS, Compl. (Doc. #1), Ex. A hereto, at 1, ¶ 1.)

The fact that this case asserts claims under Florida law and the Missouri Lawsuit seeks a declaration under the Lanham Act is immaterial. The principal of priority applies when two cases involve the same, or substantially the same, operative facts, regardless of whether one case asserts state law claims and the other federal ones. *See, e.g.*, *Beckford v. Gen. Motors Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006) (rejecting argument that "trial court erred in denying their motion to lift the stay where the instant state action contains Florida law claims . . . which were not raised in the federal action"); *Polaris Public Income Funds v. Einhorn*, 625 So. 2d 128, 129 (Fla. 3d DCA 1993) (Florida state action under Florida law sufficiently similar to warrant a stay pending disposition of New York action, even though New York action asserted claims under federal law).

Further, the Florida common law of trade dress mirrors the federal Lanham Act, which Florida courts look to for guidance. *See Keefe Group, LLC v. Rajab*, 6:20-CV-2090-ACC-GJK, 2021 WL 4173842, at *4 (M.D. Fla. Aug. 19, 2021), *report and recommendation adopted sub nom. Keefe Group, LLC v. Doe*, 6:20-CV-2090-ACC-GJK, 2021 WL 4169401 (M.D. Fla. Sept. 14, 2021); *see also PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) ("analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act. (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)); *Conair Corp. v. K & A Beauty, LLC*, No. 6:14-CV-920-CEM-TBS, 2014 WL 4385635, at *4 (M.D. Fla. Sept. 4, 2014) (holding "that Florida courts would recognize a common-

11

law unfair competition claim for trade dress infringement with the same elements as a federal trade dress infringement claim under § 43(a) of the Lanham Act").

Given the shared operative facts and centrality of the Lanham Act as the rule of decision, resolution of the Missouri Lawsuit would dispose of Plaintiffs' claims in this case entirely and remove any cloud Plaintiffs have improperly put on Build-A-Bear's name. Accordingly, the Missouri Lawsuit and this case involve the same parties and subject matter for purposes of applying the principle of priority. *See, e.g.*, *OPKO Health*, 279 So. 3d at 792 ("Because the outcome of the [federal action] is likely to resolve some questions of fact or materially affect the viability of some claims" in the state actions, "the trial court abused its discretion by failing to stay); *Pilevsky v. Morgans Hotel Grp. Mgmt., LLC*, 961 So. 2d 1032, 1035 (Fla. 3d DCA 2007) ("Comity principles dictate that an action should be stayed . . . when the first-filed lawsuit involves substantially similar parties and substantially similar claims."); *Ocwen Loan*, 307 So. 3d at 926 (trial court erred in failing to stay state court action in light of federal action that had priority where "the parties and issues in the [federal] action and the state court action are the same or closely related, and both actions arise out of the same operative facts.").

**C.   The Court must stay this action under the principle of priority.**

Based on the foregoing, under a straightforward application of the well-established principle of priority, this Court should stay this action until the Missouri federal court, whose jurisdiction first attached, resolves the action. Failure to do so would be an abuse of discretion. *See, e.g., Shooster*, 766 So. 2d at 1115-16 (trial court "departed from the essential requirements of the law" in vacating stay of Florida state action where "state and federal court in this case have concurrent jurisdiction over the same subject matter and substantially the same parties" and "the federal court exercised jurisdiction over the cause first with earlier service of process," even though

12

the federal case was filed after the state action); *OPKO Health*, 279 So. 3d at 793 (holding that the trial court abused its discretion in failing to stay Florida state actions where jurisdiction first attached in separate federal action and then in Delaware state actions involving the same subject matter and substantially the same parties, explaining that Supreme Court of Florida precedent "unequivocally rejects the concept that the suit first filed prevails" and instead "[t]he 'principle of priority' dictates that the first court to exercise jurisdiction retains the exclusive right to hear the questions and issues arising from the case."); *Reuther*, 524 So. 2d at 1035 (quashing order denying motion to stay and remanding case with instructions to stay Florida state case "in favor of proceedings in Germany" because "[j]urisdiction lies in Germany since service of process was first perfected in the German suit."); *Bedingfield*, 417 So. 2d at 1049-50 (trial court abused its discretion in failing to stay Florida state custody action in light of Georgia divorce proceeding involving same parties in which jurisdiction had first attached, finding that denial of stay was "erroneous because it violated the principle of priority," and noting that "Florida has followed this principle in instances of concurrent federal and state jurisdiction").

The equities further support a stay. Plaintiffs have engaged in bad-faith litigation tactics that unnecessarily multiplied litigation. Plaintiffs chose not to serve Build-A-Bear at the outset of this action as part of its failed attempt to secure secret and improper injunctive relief without notice or due process—even asking the Court to seal their filings. When that failed, it appeared that Plaintiffs, in stark contrast to the supposedly "emergency" circumstances alleged in their Complaint, did not take further action. Build-A-Bear then filed the Missouri Lawsuit to clear its rights in the SKOOSHERZ™ products at a national level. The Missouri federal court, given the request for declaratory relief under the Lanham Act, is uniquely situated to provide national relief that is unavailable here given the assertion of only Florida state-law claims. After the Missouri

13

Lawsuit was filed and served, Plaintiffs (instead of prosecuting this case) filed a new, separate case (the California Lawsuit) and served Build-A-Bear with process the next day. Notably, Plaintiffs seek only permanent injunctive relief in the California Lawsuit—they do not allege that any "emergency" exits or any need for preliminary relief. It was not until 32 days after filing this case—after Build-A-Bear filed and served the Missouri Lawsuit, after Plaintiffs filed and served the California Lawsuit, and after Build-A-Bear moved to enjoin litigation of the California Lawsuit—that Plaintiffs finally served Build-A-Bear in this case. After their sneak attack failed, Plaintiffs deprioritized this case and initiated another action all the way across the country, *and now, incredibly, apparently intend to proceed with both lawsuits simultaneously.*

Worse, Plaintiffs are attempting to use this action to improperly obtain discovery related to the Missouri Lawsuit. Plaintiffs served 19 Interrogatories and 30 Requests for Production with the Summons and Complaint. (*See* Pl.'s First Set of Interrogs., Exhibit G hereto; Pl.'s First Requests for Production, Exhibit H hereto.) In an especially objectionable request, and in an attempt to prematurely obtain discovery in the Missouri Lawsuit this is prohibited under the Federal Rules, Plaintiffs seek "[a]ll documents to support your claims in *Build-A-Bear Workshop, Inc. v. Kelly Toys Holdings, LLC, et al.* (Eastern District of Missouri Case No. 4:24:cv-00211)." (*See* Pls.' First Requests for Production, Exhibit H hereto at 10.)

Given the pendency of the Missouri Lawsuit, which has priority, and also the California Lawsuit, continued proceedings in this matter will result in duplicative litigation, unnecessary expenditure of judicial and party resources, precipitate the type of "a rush to judgment" the principle of priority was meant to prevent, and create a real and tangible risk of conflicting rulings in different jurisdictions (likely creating further litigation). A stay will avoid this. *See e.g.*, *Shake*

14

*Consulting, LLC v. Suncruz Casinos, LLC*, 781 So. 2d 494, 495 (Fla. 4th DCA 2001) (stay proper where "there were numerous lawsuits pending involving many of the same issues").

## CONCLUSION

For all of the foregoing reasons, Defendant Build-A-Bear Workshop, Inc. respectfully requests that the Court enter an order staying this case pending resolution of the first-served Missouri Lawsuit and awarding Build-A-Bear any further relief the Court deems just and proper.

DATED: March 14, 2024

Respectfully submitted,

By: *s/Paul Ranis*

**GREENBERG TRAURIG, P.A.**

Paul Ranis
Florida Bar No. 64408
ranisp@gtlaw.com
Joshua Brown
Florida Bar No. 826391
Joshua.brown@gtlaw.com
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 765 – 0500
Facsimile: (954) 765 – 1477

**LEWIS RICE LLC**

Michael J. Hickey, applying *Pro Hac Vice*
mhickey@lewisrice.com
Philip J. Mackey, applying *Pro Hac Vice*
pmackey@lewisrice.com
Edward T. Pivin, applying *Pro Hac Vice*
epivin@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7630
(314) 612-7630 (fax)

*Attorneys for Defendant Build-A-Bear Workshop, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of March 2024, a true and correct copy of the foregoing was filed Clerk of the Court using the State of Florida e-filing system which will send a notice of electronic service to counsel of record.

>GREENBERG TRAURIG
>401 East Las Olas Blvd., Suite 2000
>Fort Lauderdale, Florida 33301
>Telephone: 954-765-0500
>Telefax: 954-765-1477
>
>By: *s/Paul Ranis*
>    PAUL RANIS
>    Florida Bar No. 64408